PEOPLE v GRIMMETT

Docket No. 44402. Submitted March 11, 1980, at Lansing.—Decided April 24, 1980.

James Grimmett was convicted of the possession of heroin, Saginaw Circuit Court, Fred J. Borchard, J. The police were seeking suspects in a stolen property ring and had warrants for approximately 130 persons, many of whom were young black males. Defendant, a young black male, was stopped in a high crime area in early morning while walking along a sidewalk. When the police determined that defendant had no connection with the stolen property ring, they halted their inquiry regarding that subject matter. The police then observed defendant walking away with his left arm held stiffly against his body. One officer noted a small object in defendant's left hand and thought it might be a gun. The police then approached defendant again to inquire about the object. Defendant responded to the officers' question by dropping a vial of heroin which was seized by the police. After dropping the vial defendant reached for his coat pocket. The officers believed he was reaching for a gun. In a pat-down search the officers discovered a paper bag of drug paraphernalia which was also seized. Defendant appeals. On appeal, defendant challenges the initial stop by the police and admission of the seized heroin as evidence at his trial *Held:*

The police were justified in questioning defendant to determine his name and destination. Once they determined that defendant had no connection with the stolen property ring, they properly halted their inquiry regarding that subject matter. However, when defendant walked away with his arm held stiffly against his body and with a small object resembling a gun in his left hand, a new unrelated set of circumstances had arisen—carrying a weapon—and the police properly pursued defendant for further questioning. Defendant's activities were sufficiently suspicious to justify the isolated question regarding

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 797 *et seq.*
[2] 68 Am Jur 2d, Searches and Seizure §§ 56, 58.
[3-5] 68 Am Jur 2d, Searches and Seizures §§ 56, 58.
[5] 21 Am Jur 2d, Criminal Law § 349.

what he was carrying. When defendant dropped the vial of heroin in answer to the question, it was proper for the police to seize it. When defendant reached for his coat pocket, he could have been reaching for a gun and the pat-down search was a reasonable measure undertaken to protect the officers and any passersby. The paper bag of drug paraphernalia discovered during the search was properly seized. The trial court's ruling on defendant's motion to suppress evidence was not clearly erroneous.

Affirmed.

1. APPEAL — CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE — CLEAR ERROR.

A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous; a ruling is clearly erroneous where the reviewing court is firmly convinced that a mistake has been made.

2. CRIMINAL LAW — INVESTIGATIVE STOPS — IDENTITY — INFORMATION ON CRIMES.

Police officers may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest; such stops may be made to determine a person's identity or to obtain information on crimes.

3. CRIMINAL LAW — INVESTIGATIVE STOPS — ILLEGAL DETENTION — UNANTICIPATED SEPARATE CIRCUMSTANCES — INDEPENDENT SUSPICIONS — FURTHER QUESTIONING.

The police must stop on-the-street questioning of a person where any possible link to criminal activity on his part has ceased; however, where a new and unrelated set of circumstances gives rise to the possibility of an ongoing crime this independently suspicious and unanticipated occurrence allows the police to pursue the person for further questioning about it.

4. CRIMINAL LAW — INVESTIGATORY STOPS — SUSPICION OF CRIME — REASONABLENESS OF STOP — PROOF — ARREST — PROBABLE CAUSE.

A police officer is authorized to stop an individual where he has reasonable suspicion that a crime has been or is taking place and as long as he can articulate specific reasonable facts warranting the stop, the stop is valid; the quantum of proof necessary for this type of investigatory stop is significantly less than the probable cause necessary for an arrest.

5. Criminal Law — Investigatory Stops — Suspicious Circum-
   stances — Right to Question Citizens — No Obligation to
   Answer.

   A policeman may stop a citizen to request a satisfactory explana-
   tion of any suspicious circumstances; however, the citizen is
   under no obligation to reply.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Linda Berns Wright,* Appellate Prosecuting Attorney, for the people.

*Reinert & Reinert,* for defendant on appeal.

Before: MacKenzie, P.J., and Bashara and D. C. Riley, JJ.

Per Curiam. Following a bench trial, defendant was convicted of possession of heroin, contrary to MCL 335.341(4)(a); MSA 18.1070(41)(4)(a). He now appeals as of right, challenging the admission of the seized heroin.

A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous. *People v Young,* 89 Mich App 753, 763; 282 NW2d 211 (1979). A ruling is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made. *People v Goss,* 89 Mich App 598, 601; 280 NW2d 608 (1979).

In the instant case, police observed defendant, a young black male, walking along the sidewalk in a high crime area in the early morning hours. The police were seeking suspects in a stolen property ring and had warrants for approximately 130 persons, many of whom were young, black males. Defendant first challenges the initial stop by police to determine if he was one of those suspects.

Police officers may "in appropriate circum-

stances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest". *Terry v Ohio,* 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968). It is well settled that such stops may be made to determine a person's identity, *Adams v Williams,* 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972), *People v Harold Williams,* 63 Mich App 398, 403; 234 NW2d 541 (1975), or to obtain information on crimes. *Id., People v DeFillippo,* 80 Mich App 197, 202; 262 NW2d 921 (1977), *rev'd on other grounds,* 443 US 31; 99 S Ct 2627; 61 L Ed 2d 343 (1979), *People v Jeffries,* 39 Mich App 506, 511; 197 NW2d 903 (1972).

It is clear then that the police were justified in questioning defendant to determine his name and destination. Once the police determined that defendant had no connection with the stolen property ring, they properly halted their inquiry regarding that subject matter. *Harold Williams, supra,* 402-403.

Following this line of questioning, the police observed defendant walking away with his left arm held stiffly against his body. One officer noted a small object in defendant's left hand and thought that it might be a gun. The police then approached defendant again to inquire about the object.

At this point the questioning surrounding defendant's possible link to the stolen property ring had ceased. A new, unrelated set of circumstances had arisen—a possibility of an ongoing, carrying-of-a-weapon offense—and the police properly pursued defendant for further questioning. See *People v Martin,* 94 Mich App 649; 290 NW2d 48 (1980). This was not an after-found justification to pursue

the original subject matter as disapproved in *People v Dixon,* 85 Mich App 271, 277; 271 NW2d 196 (1978), but was an independently suspicious and unanticipated occurrence.

The police are authorized to stop an individual where there is a reasonable suspicion that crime has been or is taking place. *People v Lillis,* 64 Mich App 64, 70; 235 NW2d 65 (1975), *People v Hutton,* 50 Mich App 351, 361; 213 NW2d 320 (1973). This quantum of proof is significantly less than the probable cause necessary for arrest. See *Martin, supra, Harold Williams, supra.* As long as the officers can articulate specific, reasonable facts warranting the stop, the stop is valid. *Terry, supra,* 21.

In the instant case, the officers testified that defendant continued to walk away from them throughout the entire questioning. He was described as holding his stiffened left arm close to his body as if he "was trying to hide something". The police officer in the best position for observation said he thought that the small object in defendant's hand might be a gun. We believe that defendant's activities were sufficiently suspicious so as to justify the isolated question regarding what he was carrying. See *Jeffries, supra.*

While a policeman is free to request a satisfactory explanation of any suspicious circumstances, a citizen is under no obligation to reply. *Davis v Mississippi,* 394 US 721, 727, fn 6; 89 S Ct 1394; 22 L Ed 2d 676 (1969). *People v Arnold Smith,* 87 Mich App 730, 736; 276 NW2d 481 (1979).[1] In the

---

[1] It is clear then that the officers had only a limited right to inquire into these newly suspicious circumstances. Defendant could readily have refused to answer, *Davis v Mississippi,* 394 US 721, 727, fn 6; 89 S Ct 1394; 22 L Ed 2d 676 (1969), *People v Arnold Smith,* 87 Mich App 730, 736; 276 NW2d 481 (1979), or could have offered some plausible explanation for his behavior. At that point, lacking the probable cause to make an arrest, the officers would have had to let

instant case, defendant "responded" to the officer's question by dropping the object. We cannot say that it was clearly erroneous for the lower court to conclude that defendant had abandoned the dropped object—a vial of heroin—thus, it was proper for police to seize it. See *Hester v United States,* 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924), *People v Kirchoff,* 74 Mich App 641, 645-647; 254 NW2d 793 (1977).

After the instant defendant was ordered to stop and dropped the object, he reached for his coat pocket. The officers testified that they believed he was reaching for a gun. *Goss, supra,* 602. See *People v White,* 84 Mich App 351; 269 NW2d 598 (1978). Their pat-down search which followed was a reasonable measure undertaken to protect the officers and any passerby. *Terry, supra,* 23-26. Since the officers testified that the paper bag of paraphernalia discovered during the search felt like a possible weapon, it was properly seized from defendant's person.

Affirmed.

---

defendant walk away. *People v Harold Williams,* 63 Mich App 398, 403-404; 234 NW2d 541 (1975). See *People v Rivers,* 42 Mich App 561; 202 NW2d 498 (1972). It was only defendant's response of reaching for his coat pocket and perhaps a gun that permitted the officers to continue the confrontation through the *Terry, supra,* pat-down search.